THE PEOPLE OF THE STATE OF NEW YORK ex rel. PERCY
W. HORTON et al., Appellants, v. WILLIAM A. PRENDER-
GAST et al., Constituting the Public Service Commission.
NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY,
Respondent.

Eminent domain — condemnation proceedings — water and
watercourses — riparian rights — condemnation by power cor-
poration of real property for water power site — determination
by Public Service Commission requisite that site sought is
single one in major part owned by corporation, that property
sought is necessary to development, and that heat, light or
power is necessary for public use — test whether property
sought comprises one or two power sites — sufficiency of
evidence to sustain finding that major part of usable flow for
power is vested in corporation — corporation under duty to
produce, transmit and distribute electricity to public for light,
heat and power — subdivision 3 of section 624 of the Conser-
vation Law constitutional.

1. Subdivision 3 of section 624 of the Conservation Law (Cons.
Laws, ch. 65) authorizes condemnation by a power corporation of real
property for a water power site only after determination by the Public
Service Commission, upon evidence, that the site sought to be con-
demned is a single one, that the part already owned by the corporation
constitutes the major part thereof, that the property sought is neces-
sary for the full development and utilization of that undeveloped single
site and that the heat, light or power sought to be developed is neces-
sary for a public use.

2. The test whether the property sought to be condemned comprises
one power site or two is whether each can be operated without crippling
the other and where it is conceded by two owners of the river bed and
adjacent lands that a development by one would prevent a development
by the other, the site is a single one.  Subdivision 2 of section 624 of
the Conservation Law, which relates to the development of more
than one water power site, has, therefore, no application and the
Public Service Commission rather than the Water Power Commission
is the appropriate official agency to make the determination.

3. Upon application to the Public Service Commission, under
subdivision 3 of section 624 of the Conservation Law, for a certificate
of necessity as provided for therein, a finding by the Commission that

the major part of the head and volume of the usable flow for power at the site in question is vested in the petitioner, a power corporation, is supported by evidence that at the location proposed for its dam ten thousand horse power can be developed while at the property of relator only three thousand can be obtained and that of the fifty feet of head in the river the relators make claim to no more than twenty-two while the power company owns the remaining twenty-eight.

4. A contention that, as matter of law, the power company's use of the additional power will not constitute a public use, cannot be sustained. It was organized and exists by virtue of chapter 722 of the Laws of 1894 and is engaged in producing, transmitting and distributing electricity to the public for light, heat and power purposes. It is under a duty to perform such service. (Public Service Commission Law, § 5, subd. 2, §§ 65, 66, 71, 72; Cons. Laws, ch. 48, amd. L. 1921, ch. 134.) The only theory upon which the Legislature can delegate to a power company the right to take private property is founded upon the right of the general public to use the heat, light or power generated by it and such use cannot be refused when demanded by the public.

5. Nor may a contention be sustained that subdivision 3 of section 624 of the Conservation Law is unconstitutional in that it violates the equal protection clause of the Fourteenth Amendment by arbitrarily giving to the owner of the major part of the head and volume of the usable flow of a stream rights which are withheld from the owner of the minor part. The sovereign right of eminent domain may be withheld from all except the sovereign or it may be delegated at the will of the Legislature, subject only to the constitutional restrictions that just compensation must be paid for the private property taken and that the use for which it is taken must be public.

*People ex rel. Horton* v. *Prendergast,* 220 App. Div. 351, affirmed.

(Argued May 9, 1928; decided May 29, 1928.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 7, 1927, which confirmed, on certiorari, a determination of the Public Service Commission granting a certificate of necessity under subdivision 3 of section 624 of the Conservation Law.

*Allen S. Hubbard* and *Delos M. Cosgrove* for appellants. The statute violates the equal protection clause

of the Fourteenth Amendment, in that it arbitrarily gives
to the owner of a major part of the head and volume of
usable flow of a stream rights not given to the owner of a
minor part of the head and volume of usable flow of such
stream. (*Commonwealth* v. *Alger*, 61 Cush. 53; *City of
Rochester* v. *Holden*, 224 N. Y. 386; *Village of Saratoga
Springs* v. *Saratoga Gas, Elec. Light & Power Co.*, 191
N. Y. 123; *Cotting* v. *Kansas City Stock Yards Co.*, 183
U. S. 79; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Vosburg*,
238 U. S. 56; *Truax* v. *Corrigan*, 257 U. S. 312; *Kentucky
Finance Co.* v. *Paramount Auto Exch. Corp.*, 262 U. S.
544; *St. Louis Compress Co.* v. *Arkansas*, 260 U. S. 346;
*Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis*, 165 U. S. 150.)
The statute violates the equal protection clause of the
Fourteenth Amendment in that owners whose property
is taken under subdivision 3 of the section are not given
rights equal to the rights given to owners whose property
is taken under subdivision 2. (*Stuart* v. *Palmer*, 74 N. Y.
183; *City of Rochester* v. *Holden*, 224 N. Y. 386.)   The
Public Service Commission erred in holding that the
power company was the owner of the major part of the
head and volume of usable flow of the stream at the
proposed power site. (*United Paper Board Co.* v.
*Iroquois Pulp & Paper Co.*, 226 N. Y. 38.)   The Public
Service Commission erred in holding that the proceeding
to condemn relators' power sites was properly brought
under subdivision 3 of the statute. (*Matter of Water
Commrs.* v. *Amsterdam*, 96 N. Y. 351; *Matter of Pough-
keepsie Bridge Co.*, 108 N. Y. 483; *Bd. of Education of
Malone* v. *O'Rourke*, 191 App. Div. 317.)   The Public
Service Commission erred in holding that the power to
be developed at the proposed site was required for public
use. (*Matter of Mayor, etc., of New York*, 135 N. Y.
253; *Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249;
*Matter of Split Rock Cable Road Co.*, 128 N. Y. 408;
*Matter of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y.
42; *Oneonta Light & Power Co.* v. *Schwarzenbach*, 164

App. Div. 548; Randolph on Em. Dom. 52, § 56; Nichols on Em. Dom. [2d ed.] 140; Black on Const. Law [3d ed.], 477, § 177; *Attica Water, Gas & Elec. Co.* v. *Alden-Batavia Natural Gas Co.*, 3 P. S. C. 207.)

*Henry W. Killeen, Francis E. Cullen, Warren Tubbs* and *Charles R. Sweeney* for respondent. The statute does not deny to the appellants, nor to any one, the equal protection of the law. (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225; 176 U. S. 335; *People ex rel. Lasher* v. *City of New York*, 130 App. Div. 75; 194 N. Y. 439; *Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234; *Matter of Union E. R. R. Co. of Brooklyn*, 112 N. Y. 61; *Mott* v. *Eno*, 181 N. Y. 346; *Joslin Co.* v. *Providence*, 262 U. S. 668; *Sears* v. *City of Akron*, 246 U. S. 242; *Matter of Public Service Comm.*, 217 N. Y. 61; *Kahlen* v. *State of New York*, 223 N. Y. 383; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 206 N. Y. 274; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150; *Matter of Townsend*, 39 N. Y. 171; *District* v. *Ogsbury*, 203 App. Div. 43; *Matter of Simmons*, 58 Misc. Rep. 581.) The use of real property as part of a hydro-electric development is a public use and power of condemnation of such property may lawfully be delegated to a private corporation. (*Matter of Niagara, Lockport & Ontario Power Co.*, 111 App. Div. 686; *Oneonta Light & Power Co.* v. *Schwarzenbach*, 164 App. Div. 548; 219 N. Y. 588; *Matter of East Canada Creek Co.*, 49 Misc. Rep. 565; *Matter of Long Sault Development Co.* v. *Kennedy*, 158 App. Div. 398; 212 N. Y. 1; *Matter of Niagara, Lockport & Ontario Power Co.*, 125 Misc. Rep. 269; *Alabama Power Co.* v. *Mt. Vernon Cotton Co.*, 186 Ala. 622; *Jones* v. *North Georgia Electric Co.*, 125 Ga. 618; *Minnesota Canal & Power Co.* v. *Koochiching Co.*, 97 Minn. 429; *Helena Power Transmission Co.* v. *Spratt*, 35 Mont. 108; *Hollister* v. *State*, 9 Ida. 8; *Webster* v. *Pole Line Co.*, 112 Md. 416; *Rockingham Light & Power Co.* v. *Hobbs*, 72 N. H. 531; *Public Service Co.* v. *Recktenwald*,

290 Ill. 314.) The statute does not empower the Public Service Commission to determine whether the use for which condemnation is sought is a public use; nor to try and decide conflicting claims of title to real estate. (*Matter of Fowler*, 53 N. Y. 60; *Matter of City of Rochester* v. *Holden*, 224 N. Y. 386.)

O'BRIEN, J. Preliminary to the institution of a proceeding to condemn lands belonging to relators, application was made to the Public Service Commission by respondent Niagara, Lockport and Ontario Power Company for such a certificate of necessity as is provided by section 624, subdivision 3, of the Conservation Law (Cons. Laws, ch. 65) as amended by chapter 242 of the Laws of 1923. The application was granted and the Commission certified and determined that relators' real property is necessary for the full development and utilization of a certain single undeveloped water power site on the Salmon river in Oswego county for the production of heat, light or power for sale or distribution to the public; that such heat, light or power to be produced at that site is necessary for public use and that the power company already is the owner of the lands and rights constituting the major part of the head and volume of the usable flow for power at that site. The determination has been unanimously affirmed and the appeal is here by permission of the Appellate Division. After the issue of this certificate, respondent instituted its condemnation proceeding and has prosecuted it to judgment. (*Matter of Niagara, L. & O. P. Co.*, 125 Misc. Rep. 269.) The record in that proceeding is not before us.

Relators argue in the appeal now before us that the Public Service Commission was without authority to proceed under subdivision 3 of section 624 but rather that the jurisdiction to make the necessary determination is vested in the Water Power Commission by subdivision 2 of that section. They urge further, that, even assuming

subdivision 3 to be the appropriate part of the statute, the Public Service Commission erred in its findings of fact, that the power to be developed was not required for a public use and that subdivision 3 is unconstitutional.

Before considering the validity of subdivision 3, its meaning and application must be decided. Section 624 of the Conservation Law relates to the acquisition of real property for water power sites in the exercise of the right of eminent domain and in seven subdivisions regulates that right. Appellants say that subdivision 2 is the appropriate provision controlling the facts at bar, while respondent points to subdivision 3. It authorizes condemnation of " 3. Real property on the application of a corporation organized for the production of heat, light or power, after a determination by the public service commission that such property is necessary to the full development and utilization of a single undeveloped water power site, a major part of the head and volume of the usable flow for power at which site is owned by such corporation, for the production of heat, light or power for sale or distribution to the public and that such heat, light or power is necessary for public use. * * *." By the requirements of this subdivision, no power corporation is authorized to condemn unless the Public Service Commission makes a certain determination. That determination must rest upon evidence tending to prove that the site, instead of consisting of several different sites, constitutes a single one and that the part of it already owned by the power corporation constitutes the major part of the single site. The real property in order to become subject to condemnation must be necessary for the full development and utilization of that undeveloped single site. The heat, light or power sought to be developed by the power corporation must be necessary for a public use.

Approach must first be made to the proposition that the site is a single one. If two or more existed, sub-

division 3 would not apply and the Public Service Commission would have no jurisdiction. . Subdivision 2 would control and the Water Power Commission would have authority to act. Examination of the map which includes the real property owned by the parties when considered with all the other evidence supports the determination that the site is a single one. By section 610, subdivision 5, the term " water power site " is defined. It means " the real property including rights appurtenant thereto or which may become appurtenant thereto which, when a water power is developed, is necessary or useful for the construction, maintenance and operation of a plant for the use of a fall of water for the generation of power." Respondent owns and has developed a water power site at Bennett's Bridge the dam, hydro-electric power house and tail race of which, completed in 1914, are situated up stream from the location of the proposed dam at Lighthouse Hill for the power plant which is the subject of the present appeal. Title to the river bed and adjacent lands between the Bennett's Bridge power site and the Lighthouse Hill dam is vested in respondent except that portion, comparatively small in area, shown in yellow on the map. Respondent by prior adjudication has the right to impound the waters above the Bennett's Bridge dam and to control and vary the natural flow of the river between that site and the proposed one. The practical result is that the proposed site will be available for the generation of power only while the plant at Bennett's Bridge is in operation and on those infrequent occasions when the stream is swollen by freshets. While appellants own real property available for the erection of a dam, its presence would be useless during such times as the water upstream should be impounded by the dam at Bennett's Bridge. Then, too, a dam erected upon appellants' property would render inoperative any dam constructed by respondent on its land further down stream. Both parties concede that a development by one would

prevent a development by the other. This fact supplies the test whether the area below Bennett's Bridge comprises one power site or two. Of course if each development would cripple the other, only one site can exist. The real property with its appurtenances on the mapped area is not useful for the operation of more than one plant for the generation of power and, therefore, only one water power site does in fact exist. Since that is the fact, subdivision 2 of section 624 has no application and the Public Service Commission rather than the Water Power Commission is the appropriate official agency to make the determination.

The interest in the head and volume of the usable flow of water which, by prior adjudication, vests in respondent, constitutes, as matter of fact, the major part of such head and volume. Evidence supports this finding by the Commission. At the location proposed for respondent's dam ten thousand horsepower can be developed; at that of appellant's only three thousand horsepower. The full head of the river within the project area, that is, the difference in elevation, is fifty feet. Relators make claim to no more than twenty-two feet. Respondent owns the remaining twenty-eight feet of head. This constitutes the major part.

The Commission has determined that production of light, heat and power at the proposed site is necessary for public use, and that relators' real property is necessary for the production of heat, light or power for sale or distribution to the public. Appellants do not appear to contest the fact relating to the necessity for additional production of heat, light or power. That is a legislative question. They contend that, as matter of law, respondent's use of the additional power will not constitute a public use. This is a subject for judicial inquiry and does not lie within the jurisdiction of the Legislature or its agents to determine. (*Matter of City of Rochester* v. *Holden*, 224 N. Y. 386, 390.) Neither body has assumed

1928.]                    Opinion, per O'BRIEN, J.          [248 N. Y. 215]

to determine this issue of law.    Appellants argue that a public use is one which can be demanded and cannot be refused.    (*Matter of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y. 42; *Matter of Split Rock Cable Road Co.*, 128 N. Y. 408; *Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249, 259; *Matter of Mayor, etc., of N. Y.*, 135 N. Y. 253, 259.)    There is no need to consider whether there are any exceptions to that rule.    We hold that the use of the additional light, heat or power to be produced by respondent at its new power site cannot be refused when demanded by the public.    The only theory upon which the Legislature can delegate to respondent the right to take private property is founded upon the right of the general public to use the heat, light or power generated by respondent.    This power company cannot and will not be allowed to avail itself of a right resting upon only one principle and later be permitted to repudiate that principle.    It makes no attempt to repudiate.    It professes and undertakes to serve the public and will be held to such profession and undertaking.    In its petition to the Commission it alleges that it is engaged in producing, transmitting and distributing electricity to the public for light, heat and power purposes.    Its counsel stated to the Commission that it had 17,500 customers and its general manager testified that as of December 1, 1923, it had 21,309 customers.    Among these are industrial plants, distributing corporations, electric transportation corporations, municipalities and many miscellaneous residential and commercial retail customers supplied directly by respondent and by subsidiary companies owned by it.    It was organized and exists by virtue of chapter 722 of the Laws of 1894 and is engaged in producing, transmitting and distributing electricity to the public for light, heat and power purposes.    It is under a duty to perform such service.    By section 5, subdivision 2, of the Public Service Commission Law (Cons. Laws, ch. 48), as amended by chapter 134, section 10, of the Laws of 1921, the Commis-

sion possesses jurisdiction, supervision, powers and duties over the manufacture, sale or distribution of electricity for light, heat or power, over electrical plants and over persons or corporations owning, leasing or operating such plants. By section 65, as amended by section 37 of the act of 1921, every electrical corporation is required to provide such service as shall be just and reasonable and all charges shall be just and reasonable, and not more than allowed by law or by order of the Commission. By section 66, as amended by section 39 of the act of 1921, the Commission is empowered to prescribe the efficiency of the electrical supply system of the current supplied by the persons or corporations generating and selling electric current. By sections 71 and 72, as amended by sections 48 and 49 of the act of 1921, the Commission may fix just and reasonable rates and charges for electricity manufactured, sold or supplied for heat, light or power, and may order improvement in the manufacture, transmission or supply of electricity. This respondent has in fact ranged itself within the jurisdiction of the Public Service Commission. (*Niagara, L. & O. P. Co.* v. *Seneca I. & S. Co.,* 128 Misc. Rep. 335.) There can be no doubt that the power to be generated at its new site is for a public use and must be supplied to the public on reasonable demand.

Appellants argue that subdivision 3 of section 624 is unconstitutional in that it violates the equal protection clause of the Fourteenth Amendment by arbitrarily granting to the owner of the major part of the head and volume of the usable flow of a stream rights which are withheld from the owner of the minor part. The sovereign power of eminent domain may be withheld from all except the sovereign or it may be delegated at the will of the Legislature. The legislative authority to delegate is restricted by the Constitution in only two respects; just compensation must be paid for the private property taken and the use for which it is taken must be public. (*People* v. *Adiron-*

*dack Railway Company,* 160 N. Y. 225; affd., 176 U. S. 335; *Joslin Mfg. Co.* v. *City of Providence,* 262 U. S. 668.)

The order of the Appellate Division should be affirmed, with costs.

CARDOZO, Ch. J., POUND, ANDREWS and KELLOGG, JJ., concur; CRANE, J., dissents on the ground that the act, section 624, subdivision 3, of the Conservation Law is unconstitutional; LEHMAN, J., not sitting.

Order affirmed.